UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-CV-22910-HUCK/O'SULLIVAN

THEODORE D. KARANTSALIS,

    Plaintiff,

v.

UNITED STATES DEPARTMENT
OF JUSTICE and UNITED STATES
MARSHALS SERVICE,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment (D.E. #4), filed October 30, 2009.

### I.   BACKGROUND

On July 11, 2009, Plaintiff, a self-described freelance reporter whose "interests" include "obtaining information under the Freedom of Information Act," see LinkedIn.com, Theodore Karantsalis, http://www.linkedin.com/in/305librarian (last visited December 10, 2009), sent an email to the United States Marshals Service ("Marshals Service") requesting "copies of the mug shot photos of Luis Giro" pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (Compl., Ex. A (7/11/09 Email from T. Karantsalis to W. Bordley).) Giro, the former president of Giro Investments Group, Inc., plead guilty to securities fraud in 2009. The Marshals Service took booking photographs (also known as "mug shots") of Giro on May 27, 2009 after taking him into custody. (Bordley Aff. ¶ 7, Ex. A. to Def.'s Mot. for Summ. J.) On July 13, 2009, the Marshals Service denied Plaintiff's request for copies of these photographs pursuant to 5 U.S.C. § 552(b)(7)(C) (hereinafter, "Exemption 7(C)") on the basis that they were gathered for law enforcement purposes and releasing them would constitute an unwarranted invasion of Giro's personal privacy. (Compl., Ex. B (7/13/09 Email from W. Bordley to T. Karantsalis).) Plaintiff's appeal of the Marshals Service's decision was denied on September 8, 2009, (Compl.,

Ex. D (9/8/09 Letter from J. McLeod to T. Karantsalis)), and this suit was filed September 28, 2009. (D.E. #1.)

The Marshals Service contends it is entitled to summary judgment because (1) it has established, via detailed affidavit, that it conducted a reasonable search to uncover all documents responsive to Plaintiff's request in accordance with its obligations under the FOIA and (2) that the booking photographs of Giro it located were properly withheld pursuant to its internal policies and Exemption 7(C) to the FOIA because Giro has a personal privacy interest in the booking photographs, which were gathered for law enforcement purposes, and disclosing them does not serve the public interest. Plaintiff insists that summary judgment is inappropriate because the Marshals Service does not follow its policy of non-disclosure in some cases (because it released booking photographs of Bernard Madoff and Joe Nacchio), Giro does not have a privacy interest in the booking photographs, and disclosing the booking photographs will help the public determine if the Marshals Service gives preferential treatment to high-profile prisoners like Madoff and Nacchio.

## II.   ANALYSIS

Summary judgment is appropriate if the pleadings and affidavits show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To prevail on its motion, the Marshals Service must establish (1) that it "conducted a search reasonably calculated to uncover all relevant documents," as the Eleventh Circuit explained the Freedom of Information Act ("FOIA") requires in *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1558 (11th Cir. 1990), and (2) that the "mug shot" photographs of Giro the Marshals Service located pursuant to that search fall under an exemption to the FOIA, which excuses the Marshals Service from producing them to Plaintiff.

### a.   The Marshals Service's Records Search Was Sufficient.

The search conducted by the Marshals Service in response to Plaintiff's FOIA request was sufficient to meet its obligations under the FOIA. In support of its motion, the Marshals Service submitted an affidavit from William Bordley, Associate General Counsel for the Marshals Service. (Bordley Aff., Ex. A. to Def.'s Mot. for Summ. J.) In his affidavit, Bordley avers that the Marshals Service, upon receiving Plaintiff's request, conducted a search of the relevant records, namely the Prisoner Processing and Population Management/Prisoner Tracking System ("PPM/PTS"), for all persons by the name of Luis Giro. (*Id.* ¶¶ 3-4.) Bordley's affidavit

explains, in detail, the nature of the PPM/PTS, why the PPM/PTS is the appropriate place to search for responsive information, how the PPM/PTS can be searched, and what the Marshals Service did to search the PPM/PTS for information responsive to Plaintiff's request. (*Id.*) Bordley's affidavit then explains that the search returned two booking photographs of Luis Giro taken with a digital camera by the Marshals Service. (*Id.*)

An affidavit from a government official concerning a government agency's search in response to a FOIA request is sufficient evidence to establish that the search was "reasonably calculated to uncover all relevant documents" provided that the affidavit is "relatively detailed, nonconclusory, and submitted in good faith." *Ray*, 908 F.2d at 1558. The Court has carefully reviewed Bordley's affidavit and finds that it is nonconclusory, sufficiently detailed, and submitted in good faith so as to satisfy the Marshal Service's burden of proving that the search was reasonable under *Ray*. Plaintiff's Amended Opposition (D.E. #12), which includes no affidavits or other affirmative evidence, does nothing to rebut the evidence proffered by the Marshals Service in support of the conclusion that the search it conducted was reasonable under *Ray*. Accordingly, viewing all the evidence and inferences therefrom in the light most favorable to Plaintiff, the Court finds that the there is no genuine issue of material fact concerning the circumstances of the search conducted by the Marshals Service in response to Plaintiff's request, and that, as a matter of law, the Marshals Service "conducted a search reasonably calculated to uncover all relevant documents." *Ray*, 908 F.2d at 1558.

    **b.**    **The "Mug Shot" Photographs of Giro Were Properly Withheld.**

Bordley's affidavit explains that it is the policy of the Marshals Service to not release booking photographs of prisoners to the news media unless doing so serves a law enforcement purpose. (Bordley Aff. ¶ 5.) According to Bordley's affidavit, the Marshals Service policy is that the *only* law enforcement purpose for releasing a booking photograph is to address an issue involving a fugitive, which Giro—currently in federal prison—is not. (*Id.*) Notably, these policies do not apply to FOIA requests for booking photographs made from within the jurisdiction of the Sixth Circuit, because the Sixth Circuit has held that, in some circumstances, booking photographs must be disclosed to the media even if doing so does not serve a law enforcement purpose. (*Id.* ¶ 6; *Detroit Free Press v. Dep't of Justice*, 73 F.3d 93, 97 (6th Cir. 1996).) Accordingly, the Marshals Service adjusted its policy for claims arising out of the jurisdiction of the Sixth Circuit. Plaintiff's request for Giro's booking photographs, however, is

3

not subject to this policy exemption because this case falls within the jurisdiction of the Eleventh Circuit. Plaintiff has failed to provide any affirmative evidence suggesting that the Marshals Service does not abide by its stated policies for requests stemming from within the jurisdiction of the Eleventh Circuit. Incidentally, the release of the booking photographs of Madoff and Nacchio is entirely consistent with the policy of the Marshals Service because those booking photographs were released pursuant to FOIA requests from within the jurisdiction of the Sixth Circuit. (*See* Bordley Supplemental Aff. ¶¶ 3-6, Ex. A. to Def.'s Reply in Support of Mot. for Summ. J.) Plaintiff's FOIA request was not made from within the jurisdiction of the Sixth Circuit.[1] Accordingly, the Court finds that there is no question of material fact concerning the policies of the Marshals Service and that the Marshals Service complied with its policies in refusing to produce the booking photographs of Giro to Plaintiff.

Bordley's affidavit also explains that the Marshals Service made a determination that it was not legally required to produce Giro's booking photographs pursuant to Exemption 7(C), which exempts from disclosure "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to constitute an unwarranted invasion of personal privacy." (Bordley Aff. ¶ 9; 5 U.S.C. § 552(b)(7)(C).) According to Bordley, the Marshals Service decided that the booking photographs of Giro were "compiled for law enforcement purposes" because they were taken after Giro's arrest for federal criminal offenses and as a routine part of the process of taking him into federal custody. (Bordley Aff. ¶ 9.) The Marshals Service also determined that releasing the booking photographs of Giro, which show his appearance and expression while being processed, and visually reveal the fact that he was arrested, charged, and processed, could result in humiliation to Giro. (*Id.*) Finally, the Marshals Service did not discern any identifiable benefit to the public that would be achieved by releasing the booking photographs to Plaintiff.[2] (*Id.*) Accordingly, the Marshals Service concluded that Giro's privacy interest outweighed any amorphous public interest that would be furthered by disclosing the booking photographs of Giro to Plaintiff. (*Id.*) On this basis, the Marshals Service denied Plaintiff's request.

---

[1] The fact that Plaintiff has purportedly filed a new request for the booking photographs of Giro from a postal mailbox in the Sixth Circuit (*see* Pl.'s Am. Opp. to Def.'s Mot. for Summ. J. ¶ 2) is immaterial to this case, which involves a request arising from within the jurisdiction of the Eleventh Circuit.

[2] For example, the Marshals Service considered, but could not identify how releasing the photographs would shed light on the way the Marshals Service performs its duties. (Bordley Aff. ¶ 9.)

### i. The Photographs Were Compiled For Law Enforcement Purposes.

As an initial matter, Exemption 7(C) is only applicable if the information requested was compiled "for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C). Here, Plaintiff admits that the photographs were compiled for law enforcement purposes. (*See* Compl. ¶ 11 ("Plaintiff cedes that the mug shots sought in the request may constitute records of information compiled for law enforcement purposes.").) Even absent Plaintiff's concession, however, it is clear the booking photographs were compiled for law enforcement purposes because the Marshals Service is a law enforcement agency tasked with the "receipt, processing and transportation of prisoners held in the custody of a marshal or transported by the U.S. Marshals Service." 28 C.F.R. § 0.111(j). The photographs of Giro were taken pursuant to this duty. Therefore, the Court finds there is no question of material fact surrounding the circumstances under which the photographs of Giro were taken, and that, as a matter of law, the photographs of Giro that Plaintiff seeks were taken for "law enforcement purposes" under Exemption 7(C).

### ii. Disclosing the Photographs Would Result in an Unwarranted Invasion of Giro's Personal Privacy.

Because the photographs Plaintiff seeks were taken for "law enforcement purposes," the next question, in deciding whether Exemption 7(C) applies, is whether releasing the photographs would result in an unwarranted invasion of an individual's personal privacy. The Supreme Court has explained that an invasion is unwarranted where (1) the information sought implicates someone's personal privacy, (2) no legitimate public interest outweighs infringing the individual's personal privacy interest, and (3) disclosing the information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762 (1989). If the relevant facts are certain and indicate that each of these three prongs is satisfied, then the Marshals Service is entitled to a determination, as a matter of law, that releasing the photographs of Giro would be an unwarranted invasion of Giro's personal privacy.

#### (1) The Booking Photographs Implicate Giro's Personal Privacy.

As to the first prong, the Court concludes that the booking photographs sought by Plaintiff implicate Giro's personal privacy interest. The Eleventh Circuit does not appear to have squarely addressed this issue. It has, however, observed that "mug shots carry a clear implication of criminal activity." *United States v. Hines*, 955 F.2d 1449, 1455 (11th Cir. 1992). The Eleventh Circuit has also explained that "individuals have a substantial privacy interest in

5

their criminal histories." *O'Kane v. United States Customs Serv.*, 169 F.3d 1308, 1310 (11th Cir. 1999) (rejecting the notion that federal criminals are entitled to lesser degree of privacy for purposes of the FOIA). The Court agrees with the Marshals Service that a booking photograph is a unique and powerful type of photograph that raises personal privacy interests distinct from normal photographs. A booking photograph is a vivid symbol of criminal accusation, which, when released to the public, intimates, and is often equated with, guilt. Further, a booking photograph captures the subject in the vulnerable and embarrassing moments immediately after being accused, taken into custody, and deprived of most liberties. Finally, as explained in the Bordley affidavit, booking photographs taken by the Marshals Service are generally not available for public dissemination; an attribute which suggests the information implicates a personal privacy interest. *See Reporters Comm.*, 489 U.S. at 764 (explaining that information about an individual "not freely available to the public" may implicate a personal privacy interest).

Plaintiff suggests that Giro's privacy interest in the booking photographs is nil because the booking photographs were allegedly published internationally by the Marshals Service through INTERPOL while Giro was a fugitive from 2003 through May 2009. (Compl. ¶ 12.) Bordley's affidavit, however, avers that the FBI submitted a driver's license photograph of Giro to INTERPOL because it did not have any booking photographs of Giro. (Bordley Aff. ¶ 13.) Plaintiff provides no affirmative evidence refuting this claim, which is independently buttressed by the uncontroverted fact that Giro was not processed or photographed by the Marshals Service until May 27, 2009. (*Id.* ¶ 7.) It goes without saying that a driver's license is a substantially different type of photograph than a mug shot. Plaintiff also suggests that Giro's privacy interest in the booking photographs is moot because Giro has appeared in open court and pled guilty. (Compl. ¶ 18.) However, as explained above, a booking photograph does more than suggest guilt; it raises a unique privacy interest because it captures an embarrassing moment that is not normally exposed to the public eye. Finally, as explained above, the fact that the Marshals Service released photographs of other prisoners, such as Madoff, stemming from FOIA requests made from within the Sixth Circuit's jurisdiction, has no bearing on this case, which falls within the jurisdiction of the Eleventh Circuit and for which the Marshals Service has a different internal policy. Accordingly, the Court finds that Giro, despite having been adjudicated as guilty and appeared in open court, has a continuing personal privacy interest in preventing public dissemination of his booking photographs.

### (2) Disclosing the Booking Photographs Does Not Serve the Public Interest.

Next, the Court must determine if there is a public interest that justifies infringing Giro's personal privacy interest in keeping his booking photographs out of the public eye. In this case, the Court cannot identify any particular public interest that would be served by releasing the booking photographs of Giro. The core purpose of the FOIA is to disclose information that will "contribute significantly to public understanding of the operations or activities of the government." *Reporters Comm.*, 489 U.S. at 775. Plaintiff suggests that the booking photographs will reveal, by Giro's facial expressions, "whether he received preferential treatment by Defendants" because Madoff and Nacchio's booking photographs allegedly show "smirks and smiles." (Pl.'s Am. Opp. to Def.'s Mot. for Summ. J. ¶¶ 2, 5.) The Court is not persuaded that the facial expression of a prisoner in a booking photograph is a sufficient proxy to evaluate whether a prisoner is receiving preferential treatment. Common sense suggests that if a prisoner were receiving preferential treatment, he or she would not flagrantly display—and risk losing—such preferential treatment by smiling or smirking in a booking photograph. Furthermore, the general curiosity of the public in Giro's facial expression during his booking photographs is not a cognizable interest that would "contribute significantly to public understanding of the operations or activities of the government." *Reporters Comm.*, 489 U.S. at 775. Accordingly, the Court finds that disclosing the booking photographs of Giro would not serve the public interest.

### (3) Disclosure of the Booking Photographs is Unwarranted.

Finally, the Court must balance the two competing interests—Giro's personal privacy in the booking photographs against the public's interest in seeing them—to determine if releasing the information is warranted. In this case, the balance weighs heavily against disclosure. Giro has a substantial personal privacy interest in preventing public dissemination of his non-public booking photographs. On the other hand, the public obtains no discernable interest from viewing the booking photographs, except perhaps the negligible value of satisfying voyeuristic curiosities. Accordingly, the Court finds that releasing the booking photographs could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption 7(C).

In sum, the Court finds that no material facts are in dispute concerning the nature of the photographs sought by Plaintiff—they are booking photographs—or whether the Marshals Service complied with its stated policies in this case; they did. Therefore, the Court concludes, as a matter of law, that releasing the booking photographs of Giro would be an unwarranted invasion of his personal privacy under Exemption 7(C) and that the Marshals Service's decision to deny Plaintiff's request comported with its policies and the FOIA.

## III.  CONCLUSION

The uncontested facts in this case establish that the Marshals Service "conducted a search reasonably calculated to uncover all relevant documents," as required by *Ray* and that the booking photographs located pursuant to that search fall under Exemption 7(C) to the FOIA because they were gathered for law enforcement purposes and disclosing them would constitute an unwarranted invasion of Giro's personal privacy. Therefore, the Marshals Service is excused from producing the booking photographs to Plaintiff pursuant to his July 11, 2009 request. Accordingly, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (D.E. #4) is granted.

DONE in Chambers, Miami, Florida, December 14, 2009.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
Counsel of Record